OPINION OF THE COURT
Arthur M. Diamond, J.
This grounds trial was held before the court on April 30, 2009. The plaintiff sued the defendant for divorce on the ground of constructive abandonment and the defendant denied the allega *1134 tion. Both parties testified on their own behalf and careful consideration was paid to both the manner and substance of the testimony.
The parties were married on August 16, 1981 in a religious ceremony in Queens, New York. At the time of the marriage the parties were over 18 years of age. They had both resided in New York State for one year prior to the action being commenced. The plaintiff testified that she would remove all barriers to the defendant’s remarriage and that there were no actions pending for the relief sought and that no prior divorce had ever been granted.
The plaintiff testified that in July of 2003 her husband informed her that he wanted a divorce. She responded that she was not interested in getting a divorce and that she “would do anything to save our marriage.” Because their sex life had been an issue between them, she went on birth control pills to increase the spontaneity of sex. At this time, the defendant had moved into the den and was sleeping there. The plaintiff testified that she told him that she was anxious for sex and wanted a healthy sex life with him. When she was asked when she specifically remembered asking him for sex, she testified that in the winter of 2004 she purchased luxury sheets and she asked him to come to bed with her and he answered, “we’ll see,” but he did not sleep with her. In May of that year, 2004, after having gotten a letter from the defendant’s attorney advising her of his desire for a divorce, the couple was away for their daughter’s graduation weekend. She said that she asked him to come into her bed and he responded that he had gotten used to sleeping alone. She testified that the very next morning, while they were at a diner, she asked him if he “would like to use my toothbrush,” which she said was their code for being intimate and she said that he did not answer her. The plaintiff testified under cross-examination that after this episode she did not believe she asked him to have sexual relations with her again. Beginning in May of 2004 and continuing through June of 2006, letters were exchanged between each party’s counsel discussing future divorce proceedings and these were submitted into evidence. In fact, since that time the parties have continued to negotiate a divorce settlement to no avail and the plaintiff commenced the action on November 20, 2008.
The defendant testified that at no time during the last five years did the plaintiff attempt to have sex with him. He said that “sex was always an issue for us . . . she lived from excuse *1135 to excuse.” When asked for examples, he testified that she had to work the next day, was tired, and the like. He testified that when they went to counseling this was a focus of the therapy. Admitting that he had retained an attorney in 2003 to obtain a divorce and that the parties had been negotiating a divorce for many years, he was asked why he no longer wanted a divorce. He stated, “We are in a different place today . . . our daughter is married ... I had been sick. I still love her.” He did not deny moving out of the bedroom, and did not testify that the plaintiff asked him to leave. Rather, he testified that he had a conversation with her uncle who was staying at their house which led him to believe that the plaintiff wanted him to move out.
Based upon the above, the court finds that the plaintiff’s testimony was more credible than that of the defendant, and that the plaintiff had in fact made requests for sexual relations on at least three occasions and was rebuffed by the defendant. The defendant maintains that the plaintiff has not met her burden because she stopped requesting sexual relations without making “repeated requests” over the years. The plaintiff argues that she has met her burden and is entitled to the divorce. There appears to be no definitive holding on the issue of how many requests qualify as enough under existing case law.
To obtain a divorce on the ground of constructive abandonment, the party seeking the divorce must establish that the abandoning spouse unjustifiably refused to fulfill the basic obligations arising from the marriage contract and that the abandonment continued for at least one year prior to the commencement of the action. (Ostriker v Ostriker, 203 AD2d 343 [2d Dept 1994], citing Lyons v Lyons, 187 AD2d 415 [1992]; Wai Foon Chan v Yuk Sim Chan, 193 AD2d 575 [1993]; George M. v Mary Ann M., 171 AD2d 651 [1991]; De Angelis v De Angelis, 54 AD2d 1088 [1976].) In addition, case law has established that the abandonment must continue “despite repeated requests from the other spouse for resumption of cohabitation.” (See Caprise v Caprise, 143 AD2d 968, 970 [1988].)
While the court is unaware of any rule establishing how many requests for cohabitation are necessary before a divorce may be granted, the case of Archibald v Archibald (15 AD3d 431, 432 [2005]) sets forth the proposition that “evidence that the other spouse refused a single request to engage in sexual relations is insufficient to sustain a cause of action for a divorce on the ground of constructive abandonment.” Here, the plaintiff testified that she could remember three occasions between the sum *1136 mer of 2003 and the spring of 2004 where she made such requests which the defendant denied and the court credits her testimony.
Under the facts testified to herein, the court finds that the plaintiff has met her burden. Courts have recognized that there comes a time in such relationships where it would clearly be futile for one spouse to continue to ask the other to engage in sexual relations. Where, as here, the defendant, on his own, moves out of the marital bedroom and into a room on a separate floor and refuses a request after that, it is the court’s opinion that the plaintiff should be relieved of any requirement to continue to ask for sexual relations. This court’s position is further supported by precedent established in Smith v Smith (254 AD2d 788 [1998]), where the Appellate Division, First Department, held that when the wife specifically requested sexual relations, and the husband made disparaging remarks about the wife’s weight, told her that she was no longer attractive to him, and removed himself from the marital bedroom permanently, that sufficiently established the grounds of constructive abandonment.
There is an additional fact here as well which supports the plaintiff’s case. In May of 2004, after previously telling the plaintiff that he wanted a divorce, the defendant had his attorney write a letter informing her of same. Divorce negotiations ensued for several years to no avail. In the court’s view, the letter informing plaintiff that defendant is seeking a divorce is analogous to the “disparaging remarks” noted in Smith (supra).
Given these facts, this court refuses to accept the defendant’s position that the statute here requires a plaintiff to continue to place herself or himself in such a humiliating circumstance that she or he must continue to ask for cohabitation. The plaintiffs requests for sexual relations combined with the defendant’s moving out of the marital bedroom and his advising her that he wanted a divorce by a lawyer’s letter should relieve the plaintiff from continuing to ask for sexual relations.
Based upon the foregoing, the plaintiff is granted a divorce based on constructive abandonment pursuant to Domestic Relations Law § 170 (2).